**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 1:26-cr-38** |
| | : | |
| **v.** | : | **(Judge Neary)** |
| | : | |
| **MATTHEW BAIR,** | : | |
| **Defendant** | : | **Electronically filed** |

**UNITED STATES' BRIEF IN OPPOSITION
TO MOTION TO REVOKE DETENTION ORDER**

In his effort to be released pending trial, Defendant Matthew Bair suggests that his past conduct and statements present "a lot of smoke, but no fire." Doc. 20, at 6. Fortunately, under the Bail Reform Act, the Court is not required to wait for the fire.

Chief Magistrate Judge Bloom correctly found that no conditions of release would reasonably assure the safety of the community and ordered Bair detained. The Court should do the same and deny Bair's motion to revoke the detention order.

**PROCEDURAL AND FACTUAL BACKGROUND**

On March 4, 2026, a grand jury returned an indictment charging Bair with unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). Doc. 1. Bair was arrested on

March 11, 2026, and had his initial appearance and arraignment that day.  Doc. 13.

At Bair's initial proceeding, the Government sought his detention pending trial on the ground that he presents a danger to the community.  Doc. 9.  Judge Bloom held a detention hearing during which the Government described Bair's gun charge as well as additional information the FBI obtained during its investigation of Bair.  That additional information, which is described in detail below, generally pertained to Bair's prior communications and conduct that aimed to threaten and intimidate.  Judge Bloom entered a detention order, finding by clear and convincing evidence that no conditions of release would reasonably assure the safety of any other person and the community.  Doc. 15.  Judge Bloom noted that "certainly there is indication of significant threats of violence."  Doc. 20-1, at 22.  And he emphasized that there is concerning conduct, such as gun possession, that is "infused with that rhetoric."  *Id.* at 22-23.

On March 27, 2026, Bair moved to revoke the detention order. Doc. 19.  A hearing on the motion is scheduled for April 30.

## ARGUMENT

The Court should deny Bair's motion to revoke his detention order.  Detention is necessary based on the risk Bair presents to the community.  Detention is also appropriate based on Bair's risk of nonappearance.

Under 18 U.S.C. § 3145(b), the Court has authority to revoke a detention order entered by a magistrate judge.  A district judge reviews the detention issue *de novo* and makes "an independent determination." *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985).  But a district judge will nonetheless often "find it useful to consider carefully the decision and reasoning" of the magistrate judge.  *Id.* at 1395.

The Bail Reform Act directs the Court to consider certain factors "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community":

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

Each of these factors supports Bair's detention.

*First*, the nature and circumstances of Bair's offense are serious and present a risk of violence. Bair is charged with unlawfully possessing a firearm as a felon. Bair's status as a prohibited person is based on his prior court martial conviction for wrongful sale of government property, which resulted in a bad conduct discharge and was related to his theft of night vision goggles while deployed in Djibouti and sale of the googles to a Djiboutian. Bair is also prohibited

4

due to his Pennsylvania access device fraud conviction.  Congress specifically listed firearms offenses in Section 3142(g)(1) as a type of offense warranting special consideration.  And Bair's offense involved his flagrant disregard for the law—his charge is based on his shooting multiple guns at a shooting range in February 2025.  On the day of Bair's arrest, moreover, agents found three firearms in Bair's residence, and Bair admitted to agents that he was aware of those firearms.  This discovery could lead to a superseding indictment against Bair.

*Second*, the weight of the evidence against Bair is strong.  Bair's possession of the guns at the shooting range in February 2025 was captured on video.  His possession of the guns should be indisputable.  Additionally, given agents' discovery of three guns in Bair's residence and his admission at the time of his arrest, evidence supporting an additional charge under Section 922(g)(1) would be equally strong.

*Third*, Bair's history and characteristics as well as the nature and seriousness of the danger that Bair would pose if released weigh firmly in favor of detention.  Specifically, the FBI obtained the following information through its investigation of Bair:

- Bair has been a member of various accelerationist groups, including 2119 and Injekt Division.  Accelerationism refers to a white supremacist belief that the current system is irreparable and without an apparent political solution; therefore, violent action is necessary to precipitate social and governmental collapse and to start a race war.

- In early 2024, a journalist interviewed Bair about Bair's involvement in 2119 and then published an article about Bair and other members of 2119.  During the interview, they discussed one of Bair's online posts, which included the statement "Shoot your local judge."  Bair suggested that "judge" referred to a specific firearm, a "Taurus Judge," but he also noted that he is "close" to a federal judge's home in New Jersey where the judge's son was fatally shot in 2020.  Bair was almost certainly referring to the killing of Judge Esther Salas's son.  A few days after the interview, Bair forwarded the journalist the below message from a private Telegram channel:



- Below is an example of one of Bair's Telegram posts stating, "Shoot Your Local Judge." This post was in September 2024.



- In March 2024, a Telegram user posted: "Al-Queda worked so well because they had a simple rule. Before any funding, any propaganda, anything, you had to do action. You

weren't allowed to brand yourself as al queda until you do action."  Bair responded:



Cotton
ᏔᏂᎩ C8ᎦᎦACK ᎭᎩᏔ
First action, then bragging about it
And now im planning things. And not just walmart shootings.

01:44

Bair's post almost certainly referred to the leader of Injekt Division, Coleman Blevins, who was arrested in May 2021 after he posted a message suggesting he was going to commit a mass shooting at a Texas Walmart.  Blevins was later convicted of possessing a firearm as a previously convicted felon and was sentenced to 60 months' imprisonment.[1]

- The FBI's investigation included an undercover component. In March 2024, Bair and an undercover officer went to a Pennsylvania State Police barracks.  Both men were masked.  At Bair's suggestion, the undercover officer placed a brick in front of the entrance.  "RWB" was written on the

[1] https://www.justice.gov/usao-wdtx/pr/kerrville-man-who-made-terrorist-threats-sentenced-firearm-charges

brick. "RWB" likely referred to "Revolutionary White Brotherhood." As he placed the brick, the undercover said, "white fucking power." Bair then said, "white fucking power." Below are screenshots from a video of the incident. Bair is pictured in the third screenshot and was wearing a hat.

  

Use of the brick was almost certainly a reference to a 2023 incident in Florida in which a white supremacist threw a brick at a Jewish center.

- Below is a Bair Telegram post from July 2024. It includes an image of the John Brown Raid Headquarters in Washington County, Maryland. An Injket Division flag was hanging on the building's railing.



During a meeting in November 2024, in which an undercover officer was present, Bair said, "You know the John Brown house, I'm going to burn that fucking thing down."  Bair also discussed his research about the house and how he planned to no longer conduct electronic searches related to the house so that he could conceal his efforts from authorities. Additionally, Bair discussed where he would park and that

10

he would need to walk 7 to 15 miles from his parking location to the house.  Although Bair noted at one point that this plan was a joke, he also said that after thinking about it more, he started to take it more seriously and began looking into making it a reality.

- In October 2024, Bair posted to Telegram a picture of two individuals (one of whom is believed to be Bair) armed with guns with an Injekt Division flag in front of a barbed wire fence with a sign that said, "Danger No Trespassing."

 

- A firearm matching the appearance of the white firearm pictured above (held by the individual with the skull mask) was recovered from Bair's residence on the day of his arrest.

- In the below November 2024 Telegram post, Bair included a short video showing a gate at an electrical substation.



The next day, a Telegram channel associated with Injekt Division ("Chernobyl Media") posted a photograph of three armed individuals outside an electrical substation along with two Injekt Division flags draped on the station's barbed wire fence.  The electric company FirstEnergy informed the

FBI that the video and photo showed an electrical substation in Dillsburg, PA.



- In November 2024, Bair sent a text message to an employee of a terrorism research entity. The message included an image with the Injekt Division name and the statement, "Fuck with Cole, pay the toll." Cole was again a reference to Coleman Blevins, Injekt Division's leader who was arrested in May 2021 after threatening a mass shooting at a Walmart in Texas. This text message came shortly after Bair on Telegram (with the username "Sons of MVP [TRaKtifa]") doxed the employee, providing the employee's birthdate, addresses, and phone numbers, with the warning, "YOU

ARE NOT SAFE." Additionally, in January 2025, the employee received at the employee's house a paper that said, "Injekt Division sends their regards," and that contained a swastika in the middle.

- Below is a Bair Telegram post from January 2025.



- Below is a Bair Telegram post from April 2025.



- On the day of Bair's arrest, the FBI interviewed his girlfriend (and now proposed third-party custodian), Stephany Feiser.  She explained that she and Bair moved into their home in September 2025, and that Bair discussed building an additional fence on the property.  According to Feiser, Bair wanted to have a line of sight down the street in case the FBI arrived.

15

This information shows, at a minimum, that Bair has a history of incredibly disturbing threats and intimidation tactics. His targets have included private citizens, public officials, law enforcement, historical landmarks, and critical infrastructure. And as Judge Bloom emphasized when ordering Bair's detention, in addition to Bair's rhetoric, "there's also the conduct that's infused with that rhetoric," such as instances in which Bair brandished weapons. Doc. 20-1, at 22-23. Bair has repeatedly portrayed himself as eager to engage in violence. The Court should take him at his word, find that he presents a danger to the community, and keep him detained pending trial.[2]

Additionally, although the Government's detention motion was premised on the danger Bair presents, Bair also presents a risk of nonappearance. Bair, as explained by Feiser, considered adding a fence to his property based on his concern that the FBI may one day arrive

---

[2] Not only does the Court have detailed information indicating Bair's dangerousness, but the Court also lacks critical information, such as his mental health and substance abuse history, which Bair was unwilling to discuss with the probation office.

16

there.[3]  This information demonstrates, at least, a willingness to attempt to escape arrest, and at worst, a desire to attack law enforcement.  As Judge Bloom noted, moreover, Bair has had prior bench warrants and parole violations.  Doc. 20-1, at 22.  He has, in short, demonstrated an unwillingness to abide by court orders.  Bair's risk of nonappearance is an independent basis for detention.

*     *     *

The preceding information establishes the need for Bair's pretrial detention.  Bair does little to confront the facts outlined above, except to resort to general arguments that do not diminish his risk to the community and risk of nonappearance.

Bair repeatedly emphasizes that he did not follow-up his "concerning and worrisome" or "[o]ffensive [and] aggressive" talk with violence.  Doc. 20, at 4.  Maybe so.  But Bair's past statements are directly relevant to the task before the Court—evaluating the safety of the community if Bair is released.  And Bair largely disregards instances when he in fact acted—such as by possessing or brandishing

---

[3] Government counsel did not know this fact at the time the Government initially sought Bair's detention.

weapons, or by going to a state police barracks.  Bair has demonstrated, in other words, that he has not been content to simply sit behind a phone or computer.  Harm occurs, moreover, even absent direct violence.  Threatening an individual or property, or disclosing someone's identifying information, causes severe emotional harm, frequently requires the threatened party to take protective steps, and often necessitates law enforcement response.

Bair also maintains that some of his statements are protected speech.  Doc. 20, at 4.  That is debatable and depends on context.  Some of his statements are almost certainly unprotected true threats, such as his statements to the employee of the terrorism research entity:  "Fuck with Cole, pay the toll" and "YOU ARE NOT SAFE."  But Bair's argument is beside the point.  Even assuming Bair is correct about some of his statements, the Court can nonetheless consider those statements as it carries out its charge to evaluate "the history and characteristics of the person."  18 U.S.C. § 3142(g)(3).  And central to that inquiry is the fact that Bair intended that his statements would be perceived as threats.  Bair's halfhearted suggestion that his statements

18

were merely "tough rhetoric" and were not intended as threats is frivolous.  Doc. 20, at 4 n.1.

Similarly misplaced is Bair's attempt to diminish the seriousness of his conduct by relying on a photo of a family with guns.  Doc. 20, at 5.  The family members were exercising their Second Amendment rights.  Bair, by contrast, is prohibited from possessing firearms due to his multiple felony convictions.  And again, Bair has brandished guns with an intent to threaten—that can be the only interpretation of being armed and masked in front of a fence with a no trespassing sign.  The obvious implication is that Bair and his cohorts intended to act against critical infrastructure.

Bair's reliance on statistics is unpersuasive.  Detention is governed by the Bail Reform Act, not statistics.  Doc. 20, at 9-11.  The Act carefully delineates the individualized inquiry the Court must undertake and the factors the Court must consider on a case-by-case basis.  Those factors, as explained above, weigh firmly in favor of detention.

19

Finally, the lead condition of release that Bair proposes—his supervision by Feiser[4] as a third-party custodian—would be improper. Doc. 20, at 13. Feiser was either aware of Bair's threatening statements and conduct (such as his statement that he needed a good line of sight in case the FBI arrived) or was oblivious to them. Either fact makes her an unsuitable third-party custodian. But beyond that, Feiser told agents that she had purchased one of the guns found in the residence. Critically, she explained that she bought the gun at Bair's request; Bair told her that he could not purchase the gun himself due to his criminal history; she was not a fan of having guns; and she shot the gun only once. Given those facts, it is not possible for Feiser to be an appropriate third-party custodian.

---

[4] Bair asserts that Feiser "was denied the opportunity to testify at the detention hearing." Doc. 20, at 13. Feiser was not present at the hearing.

## CONCLUSION

The Court should deny Bair's motion and keep him detained

pending trial.

April 9, 2026                                    Respectfully submitted,

                                                 BRIAN D. MILLER
                                                 United States Attorney

                                                 /s/ Carlo D. Marchioli
                                                 Carlo D. Marchioli
                                                 Assistant U.S. Attorney
                                                 PA 309217
                                                 Sylvia H. Rambo U.S. Courthouse
                                                 1501 N. 6th Street, Box 202
                                                 Harrisburg, PA  17102
                                                 Tel:  (717) 221-4482
                                                 Fax:  (717) 221-4493
                                                 carlo.d.marchioli@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 9, 2026, I served the foregoing document by electronic service on the following individual:

Beatrice Diehl, Esq.
Beatrice_Diehl@fd.org

<u>/s/ Carlo D. Marchioli</u>
Carlo D. Marchioli
Assistant U.S. Attorney